## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

GRACE JABBARI,

        Plaintiff,

v.

                                Case No.

JONATHAN MAJORS,

        Defendant.

---------------------------------------------------

Plaintiff, GRACE JABBARI, by and through her undersigned attorneys, Edwards Henderson, PLLC, The Crime Victim Law Firm, alleges as follows:

### NATURE OF THE ACTION

1.     This is an action in an amount in excess of $75,000.00, exclusive of interest and costs and is within the jurisdictional limits of this Court.

2.     At all times material to this cause of action, the Plaintiff, Grace Jabbari, was a citizen of and domiciled in the United Kingdom.

3.     At all times material to this cause of action, Defendant, Jonathan Majors (hereafter "Majors"), had a residence located in New York, New York and is otherwise *sui juris*.

4.     Grace and Defendant Majors met in London in August 2021 on the set of the Marvel movie, Ant-Man & The Wasp: Quantumania, where Grace was working for the Movement Director as a movement coach for the series.

5.     Grace is not the first person that Jonathan Majors has subjected to verbal abuse or physical violence, a fact unknown to Grace when she met him.[1]

---

[1]  *See, e.g.,* https://www.rollingstone.com/tv-movies/tv-movie-features/jonathan-majors-abuse-allegations-yale-1234781136/; https://www.nytimes.com/2024/02/08/movies/jonathan-majors-girlfriends-abuse.html

6.     This case arises from a pattern of pervasive domestic abuse that began in 2021 and extended through 2023. The totality of the circumstances and the history of the domestic abuse are pertinent to understanding the severity of Grace Jabbari's damages.

7.     Majors began exhibiting concerning behavior towards Grace as early as September 2021. From then on, the verbal assaults and frightening anger of Majors continued to escalate until the first time that he physically attacked Grace in July 2022.

8.     In September 2022, Majors physically attacked Grace again, this time causing serious injuries to her body. Soon after, Grace disclosed the physical abuse to a member of Jonathan's management team in an effort to get him help.  Majors was furious when he learned that Grace had outed him as an abuser.

9.     Still reeling from the perceived betrayal, the relationship between Grace and Majors continued to deteriorate, culminating in yet another violent incident in 2023 wherein Majors caused Grace to sustain a broken finger and laceration behind her ear. Following Majors's arrest, Grace disclosed the entire history of both verbal and physical abuse to the Manhattan District Attorney's Office along with written evidence of same. Despite living in extreme fear of the repercussions, Grace has continued to tell the truth about the abuse.

10.     Now that Majors can no longer physically abuse Grace, he has resorted to very publicly abusing her reputation. Following his arrest, Majors immediately implemented an extensive media campaign smearing Grace, claiming that he was "completely innocent," "is provably the victim," that he "did not assault her whatsoever," and that "this woman was having an emotional crisis, for which she was taken to a hospital."[2]

---

[2]https://www.complex.com/pop-culture/a/karla-rodriguez/jonathan-majors-domestic-violence-case-explainer;http://vox.com/culture/2023/3/28/23658154/jonathan-majors-assault-arrest-allegations-conviction-jail.

11.     Majors went on to behave as many domestic abusers do by attempting to blame his victim; campaigning for the District Attorney to "initiate proceedings against Ms. Jabbari, holding her accountable for her crimes." The nightmare did not end there for Grace. Three months after the attack, in a truly desperate attempt to discredit his victim before trial, Majors filed a criminal complaint against Grace, causing her to be very publicly arrested and humiliated.

12.     During the criminal trial against Majors, the theme of his defense was to blame his victim and paint her as a liar, with his attorney claiming in his closing argument that, "[t]his entire case is built on Grace's lies—and, boy, does Grace lie. These prosecutors bought Grace's white lies, her big lies, and all her pretty little lies." Jonathan Majors was then found guilty of assault.

13.     In shocking denigration of our criminal justice system, following his conviction and prior to sentencing, Majors participated in an exclusive interview with ABC News wherein he doubled down on his public attack of Grace, claiming that she is lying about the entire pattern of abuse she has described, as he has "never laid [his] hands on a woman."

## JURISDICTION AND VENUE

14.     The Court has jurisdiction over Defendant Majors pursuant to CPLR §§ 301 and 302(a) because material tortious acts were committed within the State of New York, causing injury in this State, and resulting in the claims herein.

15.     Venue is proper in this Court pursuant to CPLR § 503, as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in New York County.

## FACTUAL BACKGROUND

16.     Plaintiff met Majors in August 2021 and they immediately began dating. Plaintiff fell in love with Majors.

3

17.    At the end of 2021, Majors flew Grace to visit him in Atlanta. During that trip, Grace became afraid of Majors for the first time after being verbally attacked and admonished for mentioning a prior relationship to Defendant.

18.    In June 2022, Majors continued to exhibit controlling behavior while Grace was out of town and unable to comply with his demands. The trip ended with Majors requiring Grace to promise that she would never go anywhere again where she was not available for him to reach her at all times. And so began a lengthy pattern of Defendant Majors's domestic violence and abusive behavior toward Grace.

19.    Fearful, Grace began to constantly modify her behavior to ensure that she did not trigger Majors again.

20.    In July 2022, while Grace and Majors were in Los Angeles, California, Majors became angry with Grace. She became afraid and instinctively tried to calm him down. Majors began shouting in Grace's face and grabbed both her arms, pinning them to her body. He then shoved her into the shower door, causing the shower door to open. He then threw her body into the shower wall, causing her head to hit the wall.

21.    When Grace tried to escape, things escalated.  In an effort to stop the abuse, Grace informed Majors that she was going to have to inform his team of what he had done to her, at which point, Majors began throwing candles and other objects in a frenzied state, denting the wall and leaving glass shattered on the floor.  Majors admitted in his ABC interview that he "completely lost my temper in that moment and threw it all on the ground. That's not something I would want my child to do, and I did that. I absolutely did that."

22.    While Grace was begging him to calm down and trying to stay safely away from Majors, Majors started crying and making concerning comments indicating a self-harming

4

ideology that made Grace feel that she needed to be the one comforting him even though he had been attacking her moments prior.

23.     In August 2022, Grace and Majors moved into a London Flat together while Majors was filming the Marvel series, *Loki*. At this juncture, Majors's erratic, intemperate, and physically violent behavior continued to increase towards Grace.

24.     In September 2022, Majors again became upset and began verbally assaulting Grace while chasing her around the home. When he was finally able to corner her on the bed, Majors raised his fist over her as she cowered, protecting her face with her hands. On this occasion, Majors did not physically strike Grace; he obtained control over himself and left the property as Grace locked herself in a bedroom for safety.

25.     Later in September 2022, highlighting the undeterrable nature of his conduct, Majors violently, physically assaulted Grace in London, causing her serious bodily harm. The weekend of the attack, the catalyst was that Grace invited a friend over to the new home that she shared with Majors. When they arrived, Majors had just finished personal training and became very angry with Grace for having company. After her friend left, Grace called her mother. During the conversation, Grace began laughing, which enraged Majors. Recognizing his anger, Grace immediately hung up on her mother to try to calm him down. Because she was afraid of what would happen next, Grace went to sleep.

26.     Grace woke up the next morning and left the house to go on a walk and get coffee. As she was returning home, she ran into Majors. Grace tried to gauge his mood by asking if he was okay. He responded that he was not okay and called her derogatory names and insisted that she knew what she had done wrong. To diffuse the situation, Grace walked away, back towards the house.

27.     Unbeknownst to Grace, Majors followed her. He then suddenly came up behind her, grabbed her headphones from her ears, threw them to the ground, and began stomping on the headphones until they were broken. During this fit of rage, Majors was screaming at Grace in her face and threatening that she had better not be at the house when he returned. When he stormed off, Grace picked her broken headphones up off the ground as two strangers ran towards her to provide her with aid after having witnessed the incident. Grace, terrified, then returned home and called a friend to seek shelter.

28.     While packing to leave the house as directed, Grace heard Majors barreling up the stairs. When he arrived at the bedroom, he began throwing objects in anger. Grace was able to escape from the home before Majors was able to physically hurt her.

29.     Majors then texted Grace and, "reasoned" with her saying that they made "a plan" and "now that you've told your parents the whole marriage plans are ruined." Once Grace returned to their flat, Majors began shouting at her, telling her to be "more like Michelle Obama and Coretta Scott King" and to "stick to the plan."

30.     On September 20, 2022, Majors became physically aggressive with Grace. Majors pushed Grace so hard that it bruised her backside. When Grace got up, she attempted to leave the house. Majors picked Grace up in the air and threw her against the hood of her car. Grace began shouting for help. Majors then forcefully grabbed Grace, placing her in a headlock and put his hand over her mouth to prevent someone from hearing her cries for help. He brought Grace back into their house and held his hands around her neck, stating that he wanted to kill her, and that he was going to kill her. Majors then started hitting Grace's head against the marble floor while strangling her until she felt she could no longer breathe.

31.     After the incident, Majors texted Grace asking her not to tell anyone about what had occurred. Ignoring the pain that her body was in as a result of the violence that he inflicted against her, Majors expressed concern over his career: "I fear you have no perspective of what could happen if you go to the hospital. They will ask you questions and as I don't think you can actually protect us it could lead to an investigation even if you do lie and they suspect something." Grace responded, "Nothing is fake about the pain my body is currently in. I will tell the doctor I bumped my head, if I go, I'm going to give it one more day, but I can't sleep and I need some stronger painkillers. That's all. Why would I want to tell them what really happened when it's clear I want to be with you." Defendant went on to tell Grace, "Last night I considered killing myself versus coming home... Or maybe I'm such a monster and horrible man that I don't deserve it and should just kill myself." Grace then responded, "Why would the man I love throw me around. Strangle me and look at my eyes and say he hates me and wants to kill me." She later goes on to say, "I'm reminded of what happened each walking [sic] second because I can barely move without pain. . . I also have to heal physically. That's not me stating other than facts. I have endured a bad head injury and I feel unwell. I have brain fog. I have a constant ringing headache." Despite the severity of her injuries, Grace finally succumbed to Defendant's demands, writing, "I will not go to the doctor if you don't feel safe with me doing so, or don't trust me to. I promise I would never mention you but I understand your fear," to which Majors ultimately responds, "I'm a monster. A horrible man. Not capable of love. I am killing myself soon. I've already put things in motion."

32.     Majors would threaten suicide in response to Grace's attempts to understand why Majors became physically violent with her in the aftermath and to manipulate Grace away from going to the hospital or reporting the violence to authorities. Grace believed that Majors was

capable of harming himself because he did not want anyone to find out how serious of an abuser he was.

33.     Grace lived in constant fear of Majors, who demonstrated time and time again that there was no way to deter his violent and intentional conduct.

34.     Like many victims of domestic violence, Grace believed Defendant Majors would change and stop abusing her.

35.     In December 2022, Grace and Majors moved into an apartment together in this jurisdiction.

36.     In January 2023, in an attempt to get Majors help, Grace disclosed the details of Majors' physical violence as recounted in the preceding paragraphs to a member of Majors's team.

37.     That team member then told Majors what Grace said to her about the abuse. Majors was furious at Grace for betraying him and telling a member of his team that he had physically assaulted her.

38.     Grace's disclosure of the physical violence to Major's team member was a persistent topic which ended with Majors again threatening to commit suicide.

### MAJOR CONTINUES HIS ABUSE IN NEW YORK

39.      On or about March 24, 2023, Grace and Majors went to dinner and a show in New York.

40.     Later in the evening, Majors received a text message from another woman. While Grace held Majors's phone attempting to read the message, she felt a large weight against her body and an immediate pain. In an effort to exert violence to obtain his cell phone, Majors tried to pry the phone out of Grace's hand. Grace felt extreme pressure in her right middle finger before Majors struck her with an open hand across the back of her head, causing a hard impact to the back of her

head and a laceration to the back of her ear. Grace felt continued pressure over her face and chest until Majors regained composure.

41.     Majors then exited the car, followed by Grace, who he picked up and "threw like a football" back into the car, banging Grace's head on the top of the vehicle door frame.

42.     During this incident, Grace suffered injury to her finger, causing bruising and a fracture as well as a laceration to her right ear, which required a Dermabond to repair.

43.     After having been isolated, terrorized, and convinced over a prolonged period of time that if she did anything against Majors, he would cause her grave bodily injury, Grace was reluctant to report his abusive conduct, but once NYPD became involved, she cooperated with law enforcement.

44.     On March 25, 2023, Majors was arrested by the NYPD and charged with intentional Assault in the Third Degree, Reckless Assault in the Third Degree, Aggravated Harassment in the Second Degree, Attempted Assault in the Third Degree, and Harassment in the Second Degree.

45.     After his arrest, Majors, through his attorney, repeatedly told the press that Grace was lying, that she was the aggressor, and that Grace was in the middle of an "emotional crisis" at the time of the event.[3] Majors undertook a concerted campaign to discredit and defame Grace by attacking her honesty and truthfulness and impugning her mental health.

46.     On June 21, 2023, the NYPD informed the Manhattan District Attorney's Office that Majors had reported to the Fifth Precinct with his attorney to file a criminal complaint against Grace, alleging that Grace had abused him in the March 24, 2023, incident, and that he—not Grace—was the actual victim.

---

[3] https://www.vox.com/culture/2023/3/28/23658154/jonathan-majors-assault-arrest-allegations-yale-darvo

47.     Consistent with his pattern of intimidating Grace, Majors filed the knowingly false criminal complaint and immediately disseminated the news to national and international media outlets in an effort to use his fame to cause the public to lash out against Grace and inflict on Grace extreme emotional distress.

48.     As is required protocol regarding delayed domestic violence cross-complaints, the Fifth Precinct activated an investigatory card ("I-Card") for Plaintiff's arrest.

49.     On June 28, 2023, the District Attorney's Office invited NYPD Detective Ronnie Mejia to review body-worn camera video from the underlying criminal case against Majors.

50.     Despite the falsity of the allegations, per protocol an I-Card was issued for Grace's arrest and a wanted flyer, including a photograph, was generated for Grace.

51.     On September 20, 2023, the Manhattan District Attorney's Office requested that the NYPD issue a Desk Appearance Ticket for Grace in order to minimize the impact of Majors' actions.

52.     In October of 2023, Grace was informed that the Manhattan District Attorney's Office would decline to prosecute Grace if she were to be arrested by the NYPD.

53.     Around the same time, the NYPD confirmed that pursuant to protocol only, Grace would have to appear to be arrested even though she was not going to be prosecuted.

54.     Majors and his counsel proudly filed the knowingly false, incredibly delayed complaint against Grace.

55.     In furtherance of Defendant's plan to continue to victimize and intimidate Grace, he caused information regarding her impending arrest to be widely disseminated to the press internationally.

56.     Furthering her prolonged victimization, Grace learned from the media that she was going to be arrested, which left her confused and frightened.

57.     Grace, who regularly traveled between New York and the United Kingdom for work and to visit her family, became terrified to do so due to the rumors that she was to be arrested because her abuser had filed a retaliatory and baseless police report.

58.     On October 25, 2023, following NYPD protocol requirements, Grace reported to the Tenth Precinct to be "arrested," where she was bombarded by a slew of reporters.

59.     It was then revealed that the Manhattan District Attorney's Office had declined to prosecute the case that Majors had tried to manufacture against Grace, citing a lack of prosecutorial merit.

60.     In December 2023, the criminal case against Majors went to trial. During that trial, text messages were introduced into evidence regarding the September 2022 incident wherein Majors caused Grace to sustain a head injury. As a result, Grace's allegations that Majors had violently physically assaulted her prior to the March 2023 incident became widespread international news.

61.     On December 18, 2023, following a trial by a jury of his peers, Jonathan Majors was found criminally liable and guilty of misdemeanor assault in the third degree, recklessly causing physical injury, and harassment in the second degree as a result of the violent assault that he committed against Grace in this jurisdiction.

62.     Majors made defamatory statements about Grace, both before and after his criminal trial, intending for his celebrity, wide social media following, and the public interest in his arrest to cause the public to accept his statements as fact and believe Grace was lying.

63.     Majors's intention was not only to cause many people to believe Jabbari was a liar but also to cause those people to lash out, harass, intimidate, and bully Jabbari.  Majors also intended his defamatory statements to adversely affect Jabbari's career.

64.     Majors's defamatory statements have had the intended effect on an international scale.  His brazen defamation of Jabbari, casting her as a liar on her claims of physical abuse and domestic violence, have proximately caused many people in the community to harass, bully, intimidate and even issue death threats to Jabbari, causing her the extreme fear Majors intended to set in motion.

65.     Following his criminal conviction and prior to sentencing, Majors provided a voluntary interview with ABC News that aired on January 8, 2024.

66.     During the interview, Defendant continued to show an utter lack of remorse for his actions and inability to be deterred from future similar conduct.

67.     More pertinent to this action, during the interview, and in response to Grace's numerous accusations of Majors committing acts of physical violence against her throughout their relationship, including the events recounted in this Complaint, Majors made the following false and defamatory statements:

    a.  Interviewer: "She says inside the car, you hit her in the face, twisted her arm behind her back, fractured her middle finger."

        Majors: "That did not happen."

        Majors: "I know I did not place my hands and strike that woman. It never happened."

    b.  Interviewer: "Have you ever had issues with domestic abuse?"

Majors: "I witnessed it, but never participated, no. . . yeah, never, never exercised it."

    c.   Majors: "I have never hit a woman. I have never. My hands have never struck a woman. Ever."

68.    In this pre-sentencing interview, Jonathan Majors publicly claimed that he did not hit Grace in the car, he did not break her finger, and he did not cause her any injuries during the incident that resulted in his conviction for assault.

69.    Further, in the face of Grace having accused him in and out of the courtroom of an extensive pattern of domestic violence, including to his former team member, Majors brazenly claimed that he had never hit a woman and that his hands have never struck a woman.

70.    Put bluntly, Majors's defense to Grace's descriptions of the numerous acts of violence Majors perpetrated against her was to brazenly defame her and label her a liar on all claims.

71.    On February 8, 2024, New York Magazine's the Cut published an article wherein Jonathan Majors, this time through his agent Priya Chaudhry continued to double down on the defamatory attack by saying, "Honestly, I don't give a shit. . . The idea that I should coddle" Jabbari feels like suggesting "I should coddle the woman who accused Emmett Till." Chaudhry went on to say, "You don't want someone to be polite to the person lying about you," referring to Grace.[4]

72.    Also on February 8, 2024, the New York Times published an article titled *Jonathan Majors Had a History of Abuse in Relationships, Women Say,* wherein Majors is accused of physically abusing another woman to whom he was engaged from 2015 to 2019 in an eerily similar

---

[4] www.thecut.com/article/priya-chaudhry-jonathan-majors-lawyer-interview.html

manner to the pattern of both physical and emotional abuse that he inflicted upon Grace.[5]  Ms. Chaudhry, again as an agent of Mr. Majors, denied the physical abuse in its entirety, and instead, claimed that Majors' former fiancé was the abuser—the exact same defamatory-type strategy that Majors and his legal team deployed against Grace Jabbari.

73.     As detailed by two long-term relationships that occurred prior to Plaintiff, Jonathan Majors has consistently engaged in an escalating pattern of abusive behavior towards women since as early as 2013. When publicly confronted with Grace's numerous allegations of abuse, Majors has called her a liar at every turn and very specifically claimed that he has never put his hands on a woman, with the goal of convincing the world that Grace is not a victim of domestic abuse but instead a crazy liar who should be treated as such.

### FIRST CAUSE OF ACTION
### ACTION BY VICTIM OF BATTERY

74.     The Plaintiff adopts and realleges paragraphs 1 through 73 above.

75.     On or about March 24, 2023, Defendant Majors did make bodily contact with the intent to injure Plaintiff.

76.     Defendant Majors used physical force to make bodily contact with Plaintiff when he used significant force to twist her right arm and hand, causing substantial pain and bruising to her right middle finger.

77.     Defendant Majors used physical force to make bodily contact with Plaintiff when he used significant force to strike the left side of her head causing the back of her ear to become detached.

78.     Defendant Majors used physical force to make bodily contact with Plaintiff with the intent to harm or offend Plaintiff.

---

[5] www.nytimes.com/2024/02/08/movies/jonathan-majors-girlfriends-abuse.html

79.     The violent physical force that Defendant used on Plaintiff was offensive.

80.     The violent physical force that Defendant used on Plaintiff was harmful.

81.     Defendant intended to make the offensive bodily contact without Plaintiff's consent.

82.     Plaintiff did not consent to the offensive and harmful bodily contact by Defendant.

83.     As a direct and proximate result of Defendant Majors' intentional action constituting battery, the Plaintiff has in the past suffered and, in the future, will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

84.     Defendant Majors acted intentionally, outrageously, maliciously, and with a high degree of moral turpitude demonstrating such wantonly reckless behavior as to imply a criminal indifference to civil obligations.

WHEREFORE, the Plaintiff, **GRACE JABBARI**, demands judgment against the Defendant, **JONATHAN MAJORS**, for compensatory damages, punitive damages, and such other and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
## ACTION BY VICTIM OF ASSAULT

85.     The Plaintiff adopts and realleges paragraphs 1 through 73 above.

86.     On or about March 24, 2023, Defendant Majors did perpetuate unwarranted violence against the Plaintiff and gave Plaintiff reasonable cause to believe that she was in immediate danger and that Defendant Majors had the capacity to effectuate violence against her.

87.     Defendant Majors intentionally placed Plaintiff in fear of imminent harmful or offensive contact when he used significant force to twist her right arm and hand, causing substantial pain and bruising to her right middle finger.

88.     Defendant Majors intentionally placed Plaintiff in fear of imminent harmful or offensive contact when he used significant force to strike the left side of her head causing the back of her ear to become detached from her head.

89.     As detailed above, Defendant Majors had a history of physically harming the Plaintiff prior to his March 25, 2023 arrest, which gave Plaintiff reasonable cause to believe that Defendant was acting intentionally on the evening of the subject incident, and that she was in danger of being physically abused again.

90.     As a direct and proximate result of Defendant Majors' forcible action constituting assault, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages.  Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

91.     Defendant Majors acted intentionally, outrageously, maliciously, and with a high degree of moral turpitude demonstrating such wantonly reckless behavior as to imply a criminal indifference to civil obligations.

WHEREFORE, the Plaintiff, **GRACE JABBARI**, demands judgment against the Defendant, **JONATHAN MAJORS**, for compensatory damages, punitive damages, and such other and further relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

92.      The Plaintiff adopts and realleges paragraphs 1 through 73 above.

93.      As a direct result of the assault and battery of Plaintiff, Defendant Majors committed intentional infliction of emotional distress against Plaintiff.

94.      Defendant's actions in verbally abusing and physically assaulting, and battering Plaintiff constitute extreme and outrageous conduct that shocks the conscience. Defendant's acts of repeat domestic abuse culminating in the final abusive act in this jurisdiction go beyond all possible bounds of decency and are intolerable in a civilized society as do his actions in defaming her and having her intentionally and falsely arrested in an effort to aggravate the injury he already inflicted.

95.      Defendant knew or disregarded the substantial likelihood that these actions would cause Plaintiff severe emotional distress, especially in light of the fact that he had been explicitly and repeatedly informed of the emotional distress that he had caused Plaintiff during each violent event that occurred prior to the subject incident.

96.      Defendant's actions in verbally abusing and physically assaulting and battering Plaintiff caused Plaintiff severe emotional distress and mental trauma.

97.      As a direct and proximate result of Defendant Majors' intentional infliction of emotional distress, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy, and a loss of her

capacity to enjoy life, as well as other damages.  Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

98.     Defendant Majors acted intentionally, outrageously, maliciously, and with a high degree of moral turpitude demonstrating such wantonly reckless behavior as to imply a criminal indifference to civil obligations.

WHEREFORE, the Plaintiff, **GRACE JABBARI**, demands judgment against the Defendant, **JONATHAN MAJORS**, for compensatory damages, punitive damages, and such other and further relief as this Court deems just and proper.

### FOURTH CAUSE OF ACTION
### MALICIOUS PROSECUTION

99.     The Plaintiff adopts and realleges paragraphs 1 through 73 above.

100.     On June 21, 2023, Defendant Majors commenced a criminal proceeding against Grace when he reported to the Fifth Precinct of the NYPD with his attorney to file the criminal complaint against her.

101.     There was no probable cause for the manufactured criminal proceeding against Grace that led to her wrongful arrest as same was nothing more than an offense-is-the-best-defense tactic deployed by Majors to harass and intimidate his victim.

102.     The commencement of the criminal complaint against Grace was brought out of malice.

103.     The Manhattan District Attorney's Office declined to prosecute citing a lack of prosecutorial merit.

104.    Grace suffered special injury as a result of the baseless criminal complaint that Majors filed against her and the consequence of her arrest, which Defendant caused to be extensively internationally publicized.

105.    As a direct and proximate result of Defendant Majors' malicious prosecution, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, loss of earnings, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages.  Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

106.    Defendant Majors acted intentionally, outrageously, maliciously, and with a high degree of moral turpitude demonstrating such wantonly reckless behavior as to imply a criminal indifference to civil obligations.

WHEREFORE, the Plaintiff, **GRACE JABBARI**, demands judgment against the Defendant, **JONATHAN MAJORS**, for compensatory damages, punitive damages, and such other and further relief as this Court deems just and proper.

### FIFTH CAUSE OF ACTION
### DEFAMATION

107.    The Plaintiff adopts and realleges paragraphs 1 through 73 above.

108.    Grace has informed a number of individuals about each of the physically violent incidents delineated above including, but certainly not limited to, friends, family, the New York Police Department, the Manhattan District Attorney's Office, and a London Police Department. Such allegations were also addressed on a number of occasions before the criminal court in

determining the admissibility of same in the criminal case that the State of New York prosecuted against Majors. Both Majors and his legal team are keenly aware of Grace's allegations that Majors has physically laid hands on her on more than one occasion.

109.    Subsequently, on January 8, 2024, Defendant Majors intentionally made knowingly false statements about Plaintiff on an internationally disseminated national television, including:

   a.  Interviewer: "She says inside the car, you hit her in the face, twisted her arm behind her back, fractured her middle finger."

   Majors: "That did not happen."

   Majors: "I know I did not place my hands and strike that woman. It never happened."

   b.  Interviewer: "Have you ever had issues with domestic abuse?"

   Majors: "I witnessed it, but never participated, no. . . yeah, never, never exercised it."

   c.  Majors: "I have never hit a woman. I have never. My hands have never struck a woman. Ever."

110.    In this pre-sentencing interview, Jonathan Majors publicly claimed that he did not hit Grace in the car, he did not break her finger, and he did not cause her any injuries during the incident that resulted in his conviction for assault.

111.    Further, in the face of Grace having accused him in and out of the courtroom of an extensive pattern of domestic violence, including to his former team member, Majors brazenly claimed that he had never hit a woman and that his hands have never struck a woman.

112.    Put bluntly, Majors's defense to Grace's descriptions of the numerous acts of violence Majors perpetrated against her was to brazenly defame her and label her a liar on all claims.

113.    Defendant's false statements were published to the world via ABC News.

114.    Defendant, though his agent, has further defamed Plaintiff in a number of ways through a number of international mediums, many instances of which are delineated herein.

115.    Defendant intended his false and defamatory statements to be broadcast around the world.

116.    On February 8, 2024, New York Magazine's the Cut published an article wherein Jonathan Majors' agent Priya Chaudhry discussed her treatment of Grace by saying, "Honestly, I don't give a shit. . . The idea that I should coddle" Jabbari feels like suggesting "I should coddle the woman who accused Emmett Till." Chaudhry went on to say, "You don't want someone to be polite to the person lying about you," referring to Grace.

117.    At all times material hereto, Defendant's attorney was designated with the authority to speak on behalf of Defendant Majors.

118.    At all times material hereto, Defendant Majors undertook a participatory role in his attorney's comments as evidenced by his publicly false comments surrounding the allegations.

119.    Defendant intended the false statements to be specific statements of fact. Defendant's false statements were reasonably understood by those who heard them to be specific factual claims by Majors that Plaintiff was lying about the fact that Majors had physically battered or abused her in the past.

120.    Defendant personally and through his authorized agent Priya Chaudhry, intentionally and maliciously made false and damaging statement of fact concerning Plaintiff, as detailed above.

121.    The false statements made by Chaudhry were all made by her as Majors's authorized agent and were made with direct and actual authority from Majors as the principal.

122.    The false statements that Majors made personally, and through his authorized agent Chaudhry, not only called Plaintiff's truthfulness and integrity into question, but also exposed her to public hatred, contempt, ridicule, and disgrace.

123.    Plaintiff was harmed by Defendant's false statements.

124.    As a direct and proximate result of Defendant Majors' defamation, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, loss of earnings, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages.  Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

125.    Defendant Majors acted intentionally, outrageously, maliciously, and with a high degree of moral turpitude demonstrating such wantonly reckless behavior as to imply a criminal indifference to civil obligations.

WHEREFORE, the Plaintiff, **GRACE JABBARI**, demands judgment against the Defendant, **JONATHAN MAJORS**, for compensatory damages, punitive damages, and such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 19, 2024

Respectfully Submitted,

EDWARDS HENDERSON

By:  */s/ Brittany Henderson*
    Brittany Henderson
    Bradley Edwards
    425 N. Andrews Ave., Suite 2
    Fort Lauderdale, FL 33301
    (954)-524-2820
    Fax: (954)-524-2822
    Email:  brittany@cvlf.com
          brad@cvlf.com
          ecf@cvlf.com